**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **JORDAN ECKELBERGER,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**LG CHEM, LTD., and**<br>**LG CHEM AMERICA, INC.,**<br><br>**Defendants.** | **Case No. 21-CV-906–NJR** |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on a motion to dismiss filed by Defendant LG Chem America, Inc. ("LGCAI"). (Doc. 26). LGCAI seeks to dismiss this case for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). For the reasons set forth below, the motion is denied.

## BACKGROUND

Eckelberger alleges that "a defective lithium-ion battery in an e-cigarette device suddenly and without warning exploded in his hand." (Doc. 1-1, p. 2). According to Eckelberger, the battery "that exploded and injured [him] was manufactured, marketed, exported, sold, and distributed by Defendant LG Chem. Ltd. (hereinafter 'LGC') and its wholly owned subsidiary Defendant LG Chem America, Inc. (hereinafter 'Defendant LGCAI')." (*Id*. at p. 3). The complaint also includes the following allegations:

- [Defendants] were at all times relevant, in the business of designing, testing, manufacturing, advertising, distributing and/or selling

batteries including The Battery at issue, for use in electronic cigarettes throughout the world, including Illinois.

- [T]hrough [their] actions and those of any affiliated/parent/subsidiary companies and agents, does and did at all times relevant conduct substantial business in Illinois by purposefully causing its products, including The Battery at issue, to be marketed, distributed, sold and used within Illinois.

- The Battery that exploded and injured Plaintiff was purchase[d] in [St. Clair] County via the internet and shipped to [St. Clair] County from an individual owner on Ebay prior to the events giving rise to this action.

- [Defendants] manufacture, sell, design, advertise, distribute and supply e-cigarette devises and accessories, including batteries, and specifically The Battery at issue here.

- Defendants were aware at all times relevant to his matter that these e-cigarette devices require a large amount of power to operate and typically use a lithium-ion battery. A typical user will keep "back-up" batteries at the ready since the devices will typically use at least two fully charged batteries during a full day of use. These "back-up" batteries are usually placed in a bag, purse or pants pocket when not in use.

- The Battery was an 18650 3000 mAh High Drain Rechargeable Battery.

- Plaintiff relied on literature, advertisements, promotional packaging, and statements of agents of the Defendants in order to select The Battery at issue [ ] for his personal use.

(*Id*. at pp. 3-5). Eckelberger brings the following claims: (1) Strict Liability as to LG Chem, Ltd. ("LGC"); (2) Negligence as to LGC; (3) Breach of Implied Warranty of Merchantability as to LGC; (4) Strict Liability as to LGCAI; (5) Negligence at to LGCAI; and (6) Breach of Implied Warranty of Merchantability as to LGCAI (*Id*. at pp. 2-18).

LGCAI timely removed the action from state court and filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(2). (Docs. 1, 26).[1] In response, Eckelberger moved for jurisdictional discovery because "LGCAI [ ] asserted various factual allegations surrounding the defective battery in this case and its contacts as a corporate entity with the State of Illinois, including an affidavit of its representative, HyunSoo Kim, which contains numerous factual assertions in support of its motion." (Doc. 8, pp. 1-2). The Court granted Eckelberger's motion allowing jurisdictional discovery. (Docs. 9, 25).

LGCAI's Amended Answers to Plaintiff's First Jurisdictional Interrogatories assert the following:

- If the 18650 cell identified in Plaintiff's Complaint is, in fact, an LG-brand 18650 lithium-ion cell, the cell could not have been *manufactured by LGCAI*, as LGCAI does not have any manufacturing facilities and does not manufacture any products;

- LGCAI does not distribute, advertise, or sell 18650 lithium-ion battery cells for use by *individual customers as standalone, replaceable batteries in Illinois or anywhere else*;

- LGCAI has never advertised, distributed, or sold any 18650 lithium-ion battery cells to anyone for the *purpose of resale to consumers as standalone, replaceable batteries in Illinois or anywhere else*.

- LGCAI never authorized anyone to advertise, distribute, or sell LG 18650 lithium-ion cells *for use by individual consumers as standalone, replaceable batteries in e-cigarette devices or for any other purpose*; and

[1] The Court has subject matter jurisdiction over this action on the basis of diversity of citizenship. The parties are minimally diverse, as Eckelberger is a citizen of Illinois; LGCAI is a Delaware corporation with its principal place of business in Georgia; and LGC is a South Korean company with its headquarters and principal place of business in South Korea. (Doc. 1, p. 2). The amount of controversy exceeds $75,000.00, exclusive of interest and costs. (*Id.*). LGC has not been served.

- LGCAI does not *manufacture* LG 18650 lithium-ion cells.

(Doc. 28-2, pp. 5-8) (emphasis added).

However, Eckelberger's Interrogatory 7 asks the following:

> Does Defendant LGCAI now or in the five years preceding the July 10, 2019 incident manufacture, distribute, supply, market, service, and/or sell lithium-ion batteries in the State of Illinois? If yes, name any such manufacturer(s), distributors(s), supplier(s), and or third-party seller(s) in which Defendant LGCAI does business with in regards to lithium-ion batteries in Illinois.

(Doc. 28-2, p. 7). In response, LGCAI answered:

> LGCAI objects to this interrogatory as "lithium ion batteries" is vague and unduly burdensome. LGCAI further objects that this interrogatory purports to seek information not relevant to the issue of jurisdiction, including information related to products other than the incident battery cell model at issue, and information that is outside of any relevant time period in relation to the date of the incident that is the subject of Plaintiff s lawsuit. LGCAI objects to this interrogatory on the grounds that it seeks confidential proprietary and/or trade secret information for which there is no legitimate need, and the disclosure of which will cause LGCAI competitive harm and pecuniary loss. Subject to and without waiving these objections, and subject to the stipulated protective order entered October 14, 2021, and **responding only as to 18650 lithium-ion battery cells sold to customers in Illinois between July 10,2014 and July 10,2019, LGCAI responds as follows: B2B Networks, Inc.** LGCAI did not sell any such battery cells to any entities in the e-cigarette industry, nor did LGCAI intend for the 18650 lithium-ion battery cells to be used as stand-alone, removable, rechargeable, power sources for e-cigarettes and/or vape devices.

(*Id.*) (emphasis added). Thus, jurisdictional discovery revealed that LGCAI sold thousands of 18650 lithium-ion battery cells to B2B Networks, Inc. in Illinois between July 2014 and May 2016.

## LEGAL STANDARD

When personal jurisdiction is challenged under Federal Rule of Civil Procedure

12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction over a defendant. *Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019); *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). If there are material facts in dispute regarding the Court's jurisdiction, the Court must hold an evidentiary hearing at which the plaintiff must establish jurisdiction by a preponderance of the evidence. *Purdue Research*, 338 F.3d at 782 (citing *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002)). Alternatively, the Court may decide the motion to dismiss without a hearing based on the submitted written materials so long as it resolves all factual disputes in the plaintiff's favor. *Purdue Research*, 338 F.3d at 782 (citing *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997)); *see uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423-24 (7th Cir. 2010). If the Court consults only the written materials, the plaintiff need only make a *prima facie* showing of personal jurisdiction. *Matlin*, 921 F.3d at 701; *Purdue Research*, 338 F.3d at 782 (citing *Hyatt*, 302 F.3d at 713).

## DISCUSSION

"As a procedural matter, federal courts look to state law in determining the bounds of their jurisdiction over a party." *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017) (citing FED. R. CIV. P. 4(k)(1)(A)). Because the Illinois long-arm statute permits a court to exercise jurisdiction to the full extent permitted by the Due Process Clause of the Fourteenth Amendment, the state statutory and federal constitutional requirements merge. *Id.* (citing *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010)).

"The Due Process Clause of the Fourteenth Amendment limits the power of a court to render a judgment over nonresident defendants." *Id.* at 552 (citing *World-Wide*

*Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). Thus, personal jurisdiction is only proper if the defendant has sufficient minimum contacts with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* While the defendant's physical presence in the forum State is not required, there must be sufficient minimum contacts such that he or she "should reasonably anticipate being haled into court there." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

Personal jurisdiction can be established through general or specific jurisdiction—but Eckelberger "does not contend that LGCAI is subject to the general jurisdiction of this Court." (Doc. 28, pp. 3-4). Thus, the Court focuses on whether LGCAI is subject to the Court's specific jurisdiction. "[T]he requirements for specific personal jurisdiction [are] as follows: first, defendants must have purposefully directed their activities at the forum state or purposefully availed themselves of the privilege of conducting business in the forum; second, the alleged injury must arise out of or relate to the defendants' forum-related activities; and third, any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice." *In re Sheehan*, 48 F.4th 513, 522 (7th Cir. 2022) (citations omitted).

## I. Purposeful Availment

"[T]he nature of the purposeful-direction/purposeful-availment inquiry depends in large part on the type of claim at issue." *Felland v. Clifton*, 682 F.3d 665, 674 (7th Cir. 2012). "For example, personal jurisdiction in a breach-of-contract suit generally turns on whether the defendant purposefully availed himself of the privilege of conducting

business in the forum state." *Id*. (citing *Tamburo*, 601 F.3d at 702). While personal jurisdiction in an intentional tort suit turns on the following requirements "(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Id*. at 674–75 (quoting *Tamburo*, 601 F.3d at 703).

LGCAI argues that the purposeful availment requirement is not satisfied because "LGCAI did not serve a market for standalone, replaceable consumer batteries in Illinois—or anywhere else in the world."[2] (Doc. 26, p. 8). LGCAI also contends that the purposeful availment requirement is not satisfied because "[t]he product that allegedly injured Plaintiff could only have arrived in Illinois as the result of unilateral actions of third parties with no connection LGCAI." (Doc. 26, p. 9). LGCAI argues that "it is undisputed that the 18650 cell that allegedly injured Plaintiff did not travel through the stream of commerce." (*Id*.). "Rather, several third parties with no connection to LGCAI—including the individual on eBay who sold the cell to Plaintiff—unilaterally diverted the stream and created an unauthorized backchannel that brought the cell to Illinois." (*Id*. at pp. 9-10).

To support its argument, LGCAI repeatedly cites to *Richter v. LG Chem, Ltd.*, 2020 WL 5878017 (N.D. Ill. Oct. 2, 2020). In *Richter*, the plaintiff purchased rechargeable

[2] Narrowly framing the market to be replaceable consumer batteries is beneficial for LGCAI. The problem is the Supreme Court's jurisprudence already "serves to narrow the class of claims over which a state court may exercise specific jurisdiction." *Ford*, 141 S. Ct. at 1026.

batteries for his e-cigarette. *Id*. at *1. The batteries allegedly malfunctioned and injured the plaintiff. *Id*. The plaintiff sued LGC in the Northern District of Illinois. *Id*. LGC filed a motion to dismiss for lack of personal jurisdiction, and the court permitted jurisdictional discovery. *Id*. The plaintiff's response asserted that the e-cigarette shop, where he purchased the batteries, received the batteries from a wholesale distributor—who purchased the batteries from distributors affiliated with LGC. *Id*. LGC responded that it did not have a relationship with the wholesale distributor or the alleged affiliated distributors. *Id*. Instead, LGC "sold LG HG2 18650 batteries directly to two manufacturing companies in Illinois—AllCell Technologies, LLC [ ] and Inventus Power." *Id*. at *2. But there was no evidence linking the products sold to the two manufacturing companies to the wholesale distributor or the e-cigarette shop. *Id*.

On these facts, the district court held there was no evidence indicating that LGC "purposefully directed its marketing of HG2 batteries to Illinois consumers (thus failing to satisfy the first requirement)." *Id*. at *4. The court noted that plaintiff failed to prove by a preponderance of the evidence that LGC sold the batteries sold to the alleged affiliated distributors. *Id*. The court also pointed out that even if the plaintiff established some connection between LGC and the alleged affiliated distributors, the plaintiff would "also need to establish some basis from which to infer that [LGC] knew that those companies were selling to customers in Illinois." *Id*. "In sum, because [LGC] made no 'purposeful connection' with Illinois related to the sales of HG2 batteries by [the] [alleged] [affiliated] [distributors], the [c]ourt may not exercise jurisdiction on that basis." *Id*. at *5. The court

also struck down the argument that LGC's sales to the two Illinois manufacturing companies established purposeful availment. *Id*.

Courts do not require such specific connections to establish purposeful availment when a defendant places the products at issue directly into the forum state. In *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021), two separate car accidents occurred in Montana and Minnesota. Ford moved to dismiss both suits for lack of jurisdiction arguing "that each state court had jurisdiction only if the company's conduct in the State had given rise to the plaintiff's claims." *Id*. The two products at issue included a 1996 Explorer and a 1994 Crown Victoria. *Id*. at 1023. The 1996 Explorer was assembled in Kentucky. Brief for Petitioner at 5, *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021) (Nos. 19-368, 19-369). "It [was] first sold by Ford in 1996 to an independent Ford dealership in Washington State, which then sold it to an Oregon consumer." *Id*. "The Explorer arrived in Montana years later, after being bought and sold by several subsequent owners through a series of transactions not involving Ford or an independent Ford dealership." *Id*. The 1994 Crown Victoria was "designed in Michigan; assembled the vehicle in Ontario, Canada; and sold the vehicle to an independent Ford dealership in Bismarck, North Dakota, in 1993." *Id*. at 8. "Between 1993 and 2013, the vehicle was bought and sold multiple times without any involvement by Ford." *Id*. at 9. "At the time of the accident, the vehicle was in the hands of its fifth owner, who had registered it in Minnesota in 2013." *Id*.

Despite several third parties with no connection to Ford—Ford agreed that it "'purposefully avail[ed] itself of the privilege of conducting activities' in both [Montana]

[and] [Minnesota]." *Ford*, 141 S. Ct. at 1026 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Similarly, the fact that LGCAI had no connection to the individual on eBay—who sold the battery to Eckelberger—does not impact whether it purposefully availed itself in Illinois. The key fact is that LGCAI shipped thousands of 18650 lithium-ion batteries into Illinois. (Doc. 28-1). This direct contact results from the actions of LGCAI itself, and not a third party. Therefore, LGCAI purposely availed itself of the privilege of conducting business in Illinois.

**II. Relatedness**

"The proper exercise of specific jurisdiction also requires that the defendant's minimum contacts with the forum state be '*suit-related*.'" *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 400 (7th Cir. 2020) (citations omitted). In other words, "the defendant's contacts with the forum state must be related to the plaintiff's claims to support specific personal jurisdiction." *Id*. at 401 (citing *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014)). The Supreme Court has "stated that specific jurisdiction attaches in cases . . . when a company [ ] [ ] serves a market for a product in the forum State and the product malfunctions there." *Ford*, 141 S. Ct. at 1027.

LGCAI anticipates that "Plaintiff will likely argue there is a connection between his claims and LGCAI's contact with Illinois because LGCAI shipped 18650 cells to one of [LGC's] customers in Illinois." (Doc. 26, p, 12). To combat this anticipated argument, LGCAI contends these shipments are outside the relevant time period. (*Id*. at p. 13). LGCAI also asserts that "the sale of an industrial component product to another company

has nothing to do with Plaintiff's alleged injury from using an 18650 lithium-ion cell as a standalone, replaceable consumer battery to power his vaping device." (*Id.*).

Under LGCAI's relevant time period argument, an Illinois court would exercise specific jurisdiction if the following occurred:

1) an Illinois plaintiff;
2) injured in Illinois;
3) took place within "the relevant time period" when LGCAI shipped the products to Illinois;
4) involving a product LGCAI advertised, distributed, or sold; and
5) sued LGCAI in an Illinois court.

LGCAI points out that "[t]here were no shipments after May 2016—more than three years before Plaintiff's alleged injury on June 10, 2019." (Doc. 26, pp. 12-13).

However, the Supreme Court in *Ford* acknowledged the following example to illustrate that a California court would exercise specific jurisdiction if the following occurred:

1) a California plaintiff;
2) injured in a California accident;
3) involving a Daimler-manufactured vehicle; and
4) sued Daimler in a California court alleging that the vehicle was defectively designed.

*Ford*, 141 St. Ct. at 1028 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). The Supreme Court neither required the vehicles to be first sold in the plaintiffs' forum States nor that the plaintiffs' injuries occurred within a relevant time period when Ford shipped

the vehicles. Indeed, the 1996 Explorer was shipped in 1996—nearly 19 years before the plaintiff's alleged injury in 2015. Brief for Petitioner at 5, *Ford*, 141 S. Ct. 1017 (Nos. 19-368, 19-369). The 1994 Crown Victoria was shipped in 1993—more than 20 years before plaintiff's alleged injury in 2015. *Id*. at 8. Thus, LGCAI's relevant time period argument must be rejected.

LGCAI's second argument, challenging Eckelberger's use of the battery, goes to whether its batteries were used in a foreseeable manner. According to LGCAI:

> *Bristol-Myers* does not stand for the proposition that the *only* way sales of a product in the forum State can be unrelated to a product liability plaintiff's claim is if the plaintiff does not live in the forum State. Sales of a product in a forum State can be unrelated to a plaintiff's product-liability claim for other reasons—as is the case here.
>
> LGCAI's shipments of 18650 cells to Illinois have no relationship to Plaintiff's claims and could not have given LGCAI "'fair warning'"—knowledge that its shipment of an industrial component product to another company would subject it to jurisdiction in Illinois in this consumer product liability action. *Ford*, 141 S. Ct. at 1025 (quoting *Burger King*, 471 U.S. at 472). The risks of litigation LGCAI could reasonably anticipate from shipping industrial 18650 cells to another company in no way resemble product liability claims by individual consumers who purchased 18650 cells from unauthorized retailers and distributors for use as standalone, replaceable batteries in vaping devices.

(Doc. 26, pp. 13-14).

The problem is whether the batteries were used in a foreseeable manner goes to the merits of Eckelberger's claims—not to specific jurisdiction. *See Horne v. Elec. Eel Mfg. Co., Inc.*, 987 F.3d 704, 726 (7th Cir. 2021) (noting that "not all product liability cases require expert testimony to prove that a product was defective and that the defect existed when the product left the manufacturer's control, the alternative under Illinois law is to

demonstrate that, *in the absence of abnormal use or reasonable secondary causes* the product failed to perform in the manner reasonably to be expected in light of its nature and intended function") (citing *DiCosolo v. Janssen Pharm., Inc.*, 951 N.E.2d 1238, 1244 (Ill. App. Ct. 2011)); *see also Donaldson v. Johnson & Johnson*, 37 F.4th 400, 409 (7th Cir. 2022) ("[u]nder *Tweedy*, the plaintiff must present evidence that, in the absence of abnormal use or reasonable secondary causes, the product failed to perform in the manner reasonably to be expected in light of its nature and intended function") (citations omitted).

LGCAI also filed a motion for leave to file supplemental authority in support of its motion. (Doc. 31). In that filing, LGCAI provided *Richter v. LG Chem, Ltd.*, 2022 WL 5240583 (N.D. Ill. Sept. 27, 2022), "as persuasive supplemental authority in support of LGCAI's Motion to Dismiss for Lack of Personal Jurisdiction." (*Id.*).[3] In the earlier *Richter* opinion (discussed above), the district court held that "even if the Court concluded that [LGC] purposefully availed itself of the Illinois market, no evidence indicates that [plaintiff's] claims arose from those forum-related activities (thus failing to satisfy the second requirement)." *Richter*, 2020 WL 5878017 at *4. The court held that there is no such causal relationship because the plaintiff would have been injured even had LGC not sold batteries to the two Illinois manufactures. *Id.* at *7. The court noted that the plaintiff did not allege or prove that LGC's sales to the two Illinois manufactures had anything to do with the injury he sustained. *Id.*

[3] The Seventh Circuit has repeatedly reminded courts and counsel that district court opinions have no precedential value. *See, e.g., Midlock v. Apple Vacations West, Inc.*, 406 F.3d 453, 457–58 (7th Cir. 2005).

In the most recent *Richter* opinion, the district court held the following:

> [Plaintiff's] invocation of *Ford* does not persuade this Court that it can properly exercise specific personal jurisdiction over [LGC]. A proper analogy between this case and *Ford* would require facts showing that [LGC] markets and sells its rechargeable batteries throughout Illinois, directly to consumers, for use in e-cigarettes; that [LGC] maintains a network of battery repair or reclamation shops within Illinois to help increase demand; and that despite all this, [plaintiff] just so happened to purchase his particular [LGC] batteries outside Illinois. None of this resembles reality.

*Richter*, 2022 WL 5240583 at *3. Following the analysis in either *Richter* opinion would be inconsistent with Supreme Court jurisprudence. First, the logic that no such causal relationship exists because the plaintiff would have been injured even had LGC never done anything in Illinois was rejected by the Supreme Court in *Ford*:

> Ford argues, the plaintiffs' claims "would be precisely the same if Ford had never done anything in Montana and Minnesota." Brief for Petitioner 46. Of course, that argument merely restates Ford's demand for an exclusively causal test of connection—which we have already shown is inconsistent with our caselaw. *See* Tr. of Oral Arg. 4; supra, at 1026 – 1027. And indeed, a similar assertion could have been made in *World-Wide Volkswagen*—yet the Court made clear that systematic contacts in Oklahoma rendered Audi accountable there for an in-state accident, even though it involved a car sold in New York. *See supra*, at 1026 – 1027. So too here, and for the same reasons, *see supra*, at 1027 – 1028—even supposing (as Ford does) that without the company's Montana or Minnesota contacts the plaintiffs' claims would be just the same.

141 S. Ct. at 1029. Second, the district court's use of a "proper analogy" requiring a defendant to sell directly to consumers and maintain a network of battery repair or reclamation shops within Illinois is like the "'talismanic jurisdictional formulas' [which] are not an acceptable instrument in the toolbox of a court assessing personal jurisdiction." *NBA Properties, Inc. v. HANWJH*, 46 F.4th 614, 625 (7th Cir. 2022) (quoting *Burger King*,

471 U.S. at 485). Third, the Court also takes issue with the following analysis in the recent *Richter* opinion:

> And for the two Illinois-based manufacturers to which [LGC] did sell—two companies wholly unconnected to [plaintiff's] chain-of-distribution—[LGC] did not know, and [plaintiff] certainly did not establish, whether these companies sold their end-products in Illinois. In short, unlike in *Ford*, nothing [LGC] did provided it fair warning that it might be subjected to Illinois' jurisdiction over [plaintiff's] claim.

*Richter*, 2022 WL 5240583 at *3. Not only has the Court addressed the actions of third parties in the purposeful availment section, but in *Ford*, the Supreme Court did not require that the dealerships in Minnesota and Montana to be connected to the plaintiffs' chain-of-distribution. The Court does not find the *Richter* opinions persuasive.

Here, LGCAI concedes that "[t]he product at issue in this lawsuit is an 18650 lithium-ion cell . . . ." (Doc. 26, p. 12). LGCAI shipped thousands of 18650 cells to Illinois.[4] LGCAI's contacts with Illinois "relate to" Eckelberger's claims because LGCAI's contacts with Illinois involve sales of the very lithium-ion battery that allegedly led to Eckelberger's injury. Further, Eckelberger is a citizen of Illinois, and the battery allegedly malfunctioned in Illinois. LGCAI's contacts with Illinois are related to Eckelberger's claims and support specific personal jurisdiction.

**III. Fair Play and Substantial Justice**

Finally, a district court must ensure that its exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S.

---

[4] LGCAI asserts for the first time in its briefing that it shipped the "18650 cells to one of [LGC's] customers in Illinois." (Doc. 26, p. 12). However, its answers in discovery do not reflect it was one of LGC's customers. *See* Doc. 28-2.

310, 316 (1945) (citation omitted). To do make this determination, the Seventh Circuit considers the following factors:

> [T]he burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of [the underlying dispute], and the shared interest of the several States in furthering fundamental substantive social policies.

*Purdue Research*, 338 F.3d at 781 (internal quotation marks omitted) (quoting *Burger King*, 471 U.S. at 477). "[A]s long as the plaintiff has made a threshold showing of minimum contacts, that showing is generally defeated only where the *defendant* presents 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Curry*, 949 F.3d at 402 (quoting *Burger King*, 471 U.S. at 477) (emphasis added).

Here, LGCAI fails to present a compelling case that rendering jurisdiction would be unreasonable. LGCAI does not address the above factors or make an argument as to fair play and substantial justice. Even if it did, the Court does not find subjecting LGCAI to jurisdiction in Illinois would be unfair. LGCAI is not physically present in the state, but it has easily served Illinois customers for years. Additionally, "Illinois has a strong interest in providing a forum for its residents . . . to seek redress for harms suffered within the state by an out-of-state actor." *Id*.

## CONCLUSION

For these reasons, the motion to dismiss filed by LGCAI (Doc. 26) is **DENIED**. The action will proceed on Eckelberger's claims in Counts I through VI.

Finally, the Court notes that Eckelberger has not served LG Chem, Ltd. Under Rule 4(m) of the Federal Rules of Civil Procedure, the Court will give Eckelberger an additional **60 days** to serve LG Chem, Ltd. Failure to effect timely service may result in the dismissal of that defendant.

**IT IS SO ORDERED.**

**DATED: February 10, 2023**

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**